TEJAL VYAS, LLC AND DR. P.K. VYAS, PLAINTIFFS v. CARRIAGE PARK LIMITED PART-
NERSHIP, VILAS DEVELOPMENT CORP., GANESAN VISVABHARATHY, AND
STONESAN VISVABHARATHY, DEFENDANTS

No. COA03-1144

(Filed 7 September 2004)

**1. Jurisdiction— long arm statute—out-of-state investment**

Defendants were subject to jurisdiction under North Carolina's long arm statute where there was a solicitation in a memorandum sent to plaintiffs' attorney in North Carolina about defendants' investment proposal, and a thing of value shipped from North Carolina in a check sent from plaintiffs to defendants for one investment unit. N.C.G.S. § 1-75.4.

**2. Jurisdiction— minimum contacts—out-of-state investment**

Defendants did not have the necessary minimum contacts with North Carolina for the exercise of personal jurisdiction without a due process violation where there was an investment presentation in Georgia, material sent from Illinois to North Carolina after plaintiffs initiated contact, and a telephone call from defendants to plaintiffs' attorneys in North Carolina at plaintiffs' request. Five factors are reviewed to determine

whether minimum contacts exist: the quantity of contacts, the nature and quality of contacts, the source and connection of the cause of action to the contacts, the interest of the forum state, and the convenience of the parties.

Judge TIMMONS-GOODSON dissenting.

Appeal by plaintiffs from order entered 13 May 2003 by Judge Evelyn W. Hill in Wake County Superior Court. Heard in the Court of Appeals 19 May 2004.

*Herring McBennett Mills & Finkelstein, PLLC, by Mark A. Finkelstein, for plaintiffs-appellants.*

*Hafer & Caldwell, P.A., by Colleen Kochanek, for defendants-appellees.*

TYSON, Judge.

Tejal Vyas, LLC and Dr. P.K. Vyas ("Dr. Vyas") (collectively, "plaintiffs") appeal the trial court's order granting the motions to dismiss for lack of personal jurisdiction filed by Carriage Park Limited Partnership ("Carriage Park"), Vilas Development Corp., Ganesan Visvabharathy ("Visvabharathy"), and Stonesan Visvabharathy (collectively, "defendants"). We affirm.

## I. Background

In 1994, Visvabharathy made a presentation concerning financial investments at a conference for physicians practicing in the southeast region of the United States. Dr. Vyas attended this conference held in Georgia. During the presentation, Visvabharathy discussed real estate investments, such as Carriage Park, and informed the conference attendees of the opportunity to invest in Carriage Park through Vilas Development Corp., the general partner of Carriage Park. Visvabharathy provided attendees with contact information for Vilas Development Corp.

After the presentation, Dr. Vyas approached Visvabharathy to further discuss investment opportunities. Visvabharathy "described the Carriage Park investment to him in general terms." Plaintiffs contacted defendants in Illinois seeking to invest in Carriage Park and invested $100,000.00. The investment was facilitated by plaintiffs' attorneys, both of whom are licensed North Carolina attorneys. A Subscription Agreement was signed by plaintiffs on 18

July 1994 and sent to defendants in Illinois. Plaintiffs and their attorneys communicated with Visvabharathy via telephone and by mail through 2000.

On 6 August 2002, plaintiffs instituted this action against defendants alleging breach of fiduciary duty, breach of contract, and misrepresentation. On 11 October 2002 and 1 February 2003, defendants filed motions to dismiss plaintiffs' complaint pursuant to N.C.R. Civ. P. 12(b)(2) for lack of personal jurisdiction over defendants. Following a hearing, the trial court issued an order on 9 May 2003 containing the following findings of fact:

1.  The plaintiff, Tejal Vyas, is a North Carolina Limited Liability Company and the plaintiff, Dr. P.K. Vyas, is an individual citizen and resident of Wake County, North Carolina.

2.  Carriage Park Limited Partnership is an Illinois limited partnership and Vilas Development Corporation is an Illinois corporation. Defendant Ganesan R. Visvabharathy is a citizen and resident of Illinois.

3.  Defendants made an investment presentation in the State of Georgia to a group of physicians which included the plaintiff[s].

4.  Plaintiffs contacted defendants in Illinois to invest in the Carriage Park Investment property.

5.  At no time did any of the defendants solicit business in North Carolina.

6.  All of the investment property, the documentation regarding the investments, the investor's accountants, and the attorneys regarding the property are located in Illinois.

7.  The only parties located in North Carolina are the plaintiffs and the plaintiffs' attorney.

8.  There are not sufficient contacts in North Carolina by the defendants to allow the North Carolina courts to assume jurisdiction.

## II.  Issue

The sole issue on appeal is whether the trial court erred in granting defendants' motions to dismiss for lack of personal jurisdiction.

### III. Standard of Review

"The standard of review of an order determining jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Better Business Forms, Inc. v. Davis*, 120 N.C. App. 498, 500, 462 S.E.2d 832, 833 (1995). "If presumed findings of fact are supported by competent evidence, they are conclusive on appeal despite evidence to the contrary." *Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285, 350 S.E.2d 111, 114 (1986).

A court must engage in a two-part inquiry to determine whether personal jurisdiction over a non-resident defendant is properly asserted. *Better Business Forms, Inc.*, 120 N.C. App. at 500, 462 S.E.2d at 833. First, the court must determine whether North Carolina's "long-arm" statute authorizes jurisdiction over the defendant. N.C. Gen. Stat. § 1-75.4 (2003). If so, the court must determine whether the court's exercise of jurisdiction over the defendant is consistent with due process. *Better Business Forms, Inc.*, 120 N.C. App. at 500, 462 S.E.2d at 833.

### IV. North Carolina's Long-Arm Statute

[1] Personal jurisdiction is proper here under two provisions of North Carolina's long-arm statute:

(4) Local Injury; Foreign Act—In any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury:

(a) Solicitation or services activities were carried on within the State by or on behalf of the defendant [and] . . . .

. . .

(5) Local Services, Goods or Contracts—In any action which:

. . .

(d) Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction.

N.C. Gen. Stat. § 1-75.4(4)(a) and (5)(d) (2003).

The memorandum sent to plaintiffs' attorney in North Carolina to consider defendants' investment proposal constitutes a solicitation

under N.C. Gen. Stat. § 1-75.4(4)(a). *See Godwin v. Walls,* 118 N.C. App. 341, 349, 455 S.E.2d 473, 480, *disc. rev. allowed,* 341 N.C. 419, 461 S.E.2d 757 (1995) (stating the statute does not require proof of such injury; the plaintiff need only allege an injury). Also, the $100,000.00 check sent from plaintiffs in North Carolina to defendants in Illinois for payment for one investment unit in Carriage Park constitutes a "thing[] of value" shipped from this state by plaintiffs to defendants on their order or direction pursuant to N.C. Gen. Stat. § 1-75.4(5)(d). For either of these two reasons, the defendants are subject to jurisdiction under North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4.

## V. Due Process

[2] Since at least one requirement under North Carolina's long-arm statute allows plaintiffs to assert jurisdiction over defendants, the inquiry becomes whether plaintiffs' assertion of jurisdiction over defendants complies with due process. "When personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry—whether defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process." *Hiwassee Stables, Inc. v. Cunningham,* 135 N.C. App. 24, 27, 519 S.E.2d 317, 320 (1999) (citing *Murphy v. Glafenhein,* 110 N.C. App. 830, 431 S.E.2d 241, *disc. rev. denied,* 335 N.C. 176, 436 S.E.2d 382 (1993)).

The Due Process Clause of the Fourteenth Amendment limits the power of a state to exercise *in personam* jurisdiction over a nonresident defendant. *Hiwassee Stables, Inc.,* 135 N.C. App. at 28, 519 S.E.2d at 320. In determining whether the exercise of personal jurisdiction comports with due process, the crucial inquiry is whether the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940), [*reh'g denied,* 312 U.S. 712, 85 L. Ed. 1143 (1941)]).

To generate minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum state and invoked the benefits and protections of the laws of North Carolina. *International Shoe Co.,* 326 U.S. at 319, 90 L. Ed. at 104; *Buying Group, Inc. v. Coleman,* 296 N.C. 510, 515, 251 S.E.2d 610, 614 (1979); *Hiwassee Stables, Inc.,* 135 N.C. App. at

28, 519 S.E.2d at 320-21; *Godwin*, 118 N.C. App. at 353, 455 S.E.2d at 482. The relationship between the defendant and the forum state must be such that the defendant should "reasonably anticipate being haled into" a North Carolina court. *Cherry Bekaert & Holland v. Brown*, 99 N.C. App. 626, 632, 394 S.E.2d 651, 656 (1990). The facts of each case determine whether the defendant's activities in the forum state satisfy due process. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 96 L. Ed. 485, 492, *reh'g denied*, 343 U.S. 917, 96 L. Ed. 1332 (1952).

Here, we hold defendants did not engage in sufficient minimum contacts in North Carolina to justify the exercise of personal jurisdiction without violating defendants' due process rights.

Plaintiffs assign error to only two of the trial court's findings of facts: "5) At no time did any of the defendants solicit business in North Carolina;" and "8) There are not sufficient minimum contacts in North Carolina by defendants to allow the North Carolina courts to assume jurisdiction." Finding of fact No. 8 is the ultimate issue on appeal and will be addressed after weighing all of the evidence. *See Hiwassee Stables, Inc.*, 135 N.C. App. at 27, 519 S.E.2d at 317. Evidence to support finding of fact No. 5 shows that after an investment presentation in Georgia, plaintiffs contacted and requested defendants to send investment materials to them from Illinois to North Carolina. Defendants also spoke with plaintiffs' attorneys in North Carolina upon plaintiffs' request after plaintiffs received the investment offering. Our Supreme Court has held that "a contractual relationship between a North Carolina resident and an out-of-state party alone does not *automatically* establish the necessary minimum contacts with this State." *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 367, 348 S.E.2d 782, 786 (1986). The presentation and initial discussions between plaintiffs and defendants occurred in Georgia. Plaintiffs initiated contact with defendants in Illinois. Competent evidence in the record supports the trial court's finding of fact No. 5.

To determine whether the remaining finding of fact is supported by competent evidence, and thus conclusive on appeal, we review five factors from precedents to determine whether minimum contacts existed. *Eluhu v. Rosenhaus*, 159 N.C. App. 355, 583 S.E.2d 707 (2003), *aff'd*, 358 N.C. 372, 595 S.E.2d 146 (2004) (No personal jurisdiction involving alienation of affections claim where the defendant was physically present in North Carolina, owned and rented property in North Carolina, and had resided in North Carolina).

The factors are: "(1) the quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience of the parties." *Cherry Bekaert,* 99 N.C. App. at 632, 394 S.E.2d at 655 (quoting *New Bern Pool & Supply Co. v. Graubart,* 94 N.C. App. 619, 624, 381 S.E.2d 156, 159, *aff'd per curium,* 326 N.C. 480, 390 S.E.2d 137 (1990)); *Tutterrow v. Leach,* 107 N.C. App. 703, 708, 421 S.E.2d 816, 819 (1992), *appeal dismissed,* 333 N.C. 466, 428 S.E.2d 185 (1993).

This Court must also weigh and consider the interests of and fairness to the parties involved in the litigation. *Tutterrow,* 107 N.C. App. at 708, 421 S.E.2d at 819; *see Eluhu,* 159 N.C. App. 355, 583 S.E.2d 707. Where evidence supports unchallenged findings of fact, "this Court must affirm the order of the trial court" dismissing this action for lack of personal jurisdiction over defendants. *Better Business Forms, Inc.,* 120 N.C. App. at 500, 462 S.E.2d at 833.

## A.  Quantity of Contacts

The evidence shows that plaintiffs and defendants independently traveled to Georgia to give and attend a presentation at a physicians' convention. After returning to North Carolina, plaintiffs initiated contact with defendants in Illinois to inquire about the investment opportunities discussed in Georgia and requested defendants to mail investment materials to North Carolina. *See CFA Medical, Inc. v. Burkhalter,* 95 N.C. App. 391, 395, 383 S.E.2d 214 (1989) ("Which party initiates the contact is taken to be a critical factor in assessing whether a non-resident defendant" is subject to personal jurisdiction based on minimum contacts.)

## B.  Nature and Quality of Contacts

Defendants have never been physically present in North Carolina. Any contact by defendants with plaintiffs in North Carolina resulted from an initiation and request by plaintiffs. Defendants' contacts were to mail the brochure and place a telephone call to plaintiffs' attorney in North Carolina, at plaintiffs' request.

## C.  Source and Connection of the Cause of the Action to the Contacts

Plaintiffs' cause of action arises out of partnerships, real property, services, and activities located solely in Illinois. Neither defendants nor any of the investment property is located in North Carolina.

#### D.  Interest of the Forum State

Plaintiffs expressly agreed that the Subscription Agreement was to be governed by the laws of Illinois. While choice of law clauses are not determinative of personal jurisdiction, they express the intention of the parties and are a factor in determining whether minimum contacts exist and due process was met. *Corbin Russwin, Inc. v. Alexander's Hdwe., Inc.*, 147 N.C. App. 722, 728, 556 S.E.2d 592, 597 (2001).

#### E.  Convenience of the Parties

Defendants all reside in or are entities based in Illinois. None have been physically present in North Carolina. Defending against a suit in North Carolina would be inconvenient.

After reviewing all five factors, competent evidence supports the trial court's conclusion that defendants did not engage in requisite minimum contacts to satisfy the Due Process Clause. U.S. Const. amend. V and amend. XIV, § 1. The trial court properly granted defendants' motions to dismiss. Plaintiffs' assignments of error are overruled.

The dissenting opinion argues that defendants' activities satisfy the statutory and constitutional requirements for personal jurisdiction and cites *Carson v. Brodin*, 160 N.C. App. 366, 585 S.E.2d 491 (2003) and *New Bern Pool & Supply Co.*, 94 N.C. App. 619, 381 S.E.2d 156.

In *Carson*, a North Carolina couple sued a Virginia resident they hired to construct a home in Virginia. This Court upheld the plaintiffs' assertion of personal jurisdiction over the defendant based on two factors which are distinguishable from the facts here.

First, the defendant in *Carson* made two, possibly three, trips to North Carolina. *Carson*, 160 N.C. App. at 368, 585 S.E.2d at 494. The defendant met personally with the plaintiffs while in North Carolina to discuss the construction project. *Id.* The trips to the forum state and face-to-face meetings were determinative factors to this Court in upholding personal jurisdiction to the plaintiffs. *Id.* at 372, 585 S.E.2d at 496 (other factors included, entering into a contract with North Carolina residents that was executed in North Carolina, making numerous phone calls, mailings into the state during the contract negotiations, and sending bills into North Carolina which were paid from plaintiffs' North Carolina bank account).

Unlike *Carson*, no evidence shows defendants ever visited North Carolina during the events at issue or for any other business transaction, a fact acknowledged by the dissenting opinion. The only personal contact between the parties occurred in Georgia following defendants' investment presentation. After returning to North Carolina, plaintiffs telephoned defendants and requested investment literature. The remaining relationship existed over the telephone and through the mail with plaintiffs in North Carolina and defendants in Illinois. The lack of any prior visits to or physical presence in North Carolina by defendants distinguishes this case from *Carson*. Also, the contract in *Carson* involved a consumer contract between homeowners and a builder. Here, the parties are sophisticated investors in a speculative commercial venture and represented by counsel.

The second distinction the dissenting opinion shows to justify upholding personal jurisdiction over defendants are three particular items mailed between the two parties: (1) a memo from defendants to plaintiffs soliciting investments for a real estate venture in Illinois; (2) a Subscription Agreement executed by plaintiffs in North Carolina and mailed to defendants in Illinois; and (3) plaintiffs' check drawn on a North Carolina bank and mailed to defendants in Illinois. The dissenting opinion claims this series of correspondence establishes minimum contacts between the forum state and defendants. These items were all necessary components of the contract being negotiated and executed for sale of an investment interest in real estate located in Illinois. The result was a single contract between the parties. Both our Supreme Court and this Court have recognized that more contacts with the forum state by a defendant is required.

Our Supreme Court ruled that a "substantial connection" to the state is required in addition to a single contract to uphold personal jurisdiction. *Tom Togs, Inc.*, 318 N.C. at 367, 348 S.E.2d at 786 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 85 L. Ed. 2d 528, 545 (1985); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 2 L. Ed. 2d 223 (1957); *Goldman v. Parkland of Dallas, Inc.*, 277 N.C. 223, 176 S.E.2d 784 (1970)). In *Tom Togs, Inc.*, the out of state defendants performed their obligations under the contract in the forum state, a critical point in finding personal jurisdiction. 318 N.C. at 367, 348 S.E.2d at 786-87. The Court also considered the defendants made an offer to the plaintiff whom defendants knew to be located in North Carolina, the plaintiff accepted the offer in North Carolina, and the goods were manufactured and shipped from this State.

**TEJAL VYAS, LLC v. CARRIAGE PARK LTD. P'SHIP**

[166 N.C. App. 34 (2004)]

This Court has ruled that "the mere act of entering into a contract with a forum resident . . . will not provide the necessary minimum contacts with the forum state, especially when all the elements of the defendants' performance . . . are to take place outside the forum." *Phoenix America Corp. v. Brissey*, 46 N.C. App. 527, 532, 265 S.E.2d 476, 480 (1980) (citing *Iowa Electric Light and Power Co. v. Atlas Corp.*, 603 F.2d 1301 (8th Cir. 1979), *cert. denied*, 445 U.S. 911, 63 L. Ed. 2d 327 (1980)).

The contract's purpose was to invest in real estate ventures located in Illinois. The agreement required defendants to perform their obligations in Illinois, governed by Illinois law. Defendants' only connection to North Carolina was plaintiffs' limited liability company registered and located in North Carolina that contracted with defendants to become an investor. Our Courts require more than a single contact with an out of state defendant to satisfy the due process requirements for personal jurisdiction. *Phoenix America Corp.*, 46 N.C. App. at 532, 265 S.E.2d at 480.

The dissenting opinion also cites *New Bern Pool & Supply Co.* where personal jurisdiction was upheld despite the defendant never having physically visited North Carolina. 94 N.C. App. 619, 381 S.E.2d 156. In that case, the plaintiff, a North Carolina corporation, responded to an advertisement in a trade magazine placed by the defendant, a New Jersey resident, for the sale of an airplane. *Id.* at 621, 381 S.E.2d at 157. After consummating the sale, the plaintiff experienced troubles with the plane and filed suit. *Id.* This Court found personal jurisdiction in North Carolina based on several factors: the defendant solicited the sale of the airplane in a national trade magazine, made numerous telephone calls and mailings to the plaintiff in North Carolina, and directed plaintiff. to forward funds drawn on a North Carolina bank to New York. *Id.* at 625-26, 381 S.E.2d at 160. In addition, the opinion noted that

> [i]n terms of convenience to the parties . . . repairs to the aircraft in question were performed in North Carolina[,] . . . witnesses to [the] repairs . . . are residents of North Carolina, and FAA personnel who were potential witnesses as a result of having inspected the plane in North Carolina, were also residents of North Carolina.

*Id.* at 625, 381 S.E.2d at 160.

TEJAL VYAS, LLC v. CARRIAGE PARK LTD. P'SHIP

[166 N.C. App. 34 (2004)]

The key distinctions between the case at bar and *New Bern Pool & Supply Co.* are how the parties became acquainted and where the post-contractual activities occurred. Defendants here never visited North Carolina. They did not advertise directly to the State or its citizens to solicit or maintain commercial interests within North Carolina. The sales presentation occurred in Georgia. The defendant in *New Bern Pool & Supply Co.* placed an advertisement in a national trade magazine delivered to the plaintiff in North Carolina for the sale of an airplane. 94 N.C. App. at 624, 381 S.E.2d at 159. This Court ruled that advertising in national magazines alone is not determinative of personal jurisdiction. *Hankins v. Somers*, 39 N.C. App. 617, 621, 251 S.E.2d 640, 643, *disc. rev. denied*, 297 N.C. 300, 254 S.E.2d 920 (1979) (citing *International Shoe Co.*, 326 U.S. at 316, 90 L. Ed. at 102). Defendants solicited business from a limited audience, in a live presentation given in another state, and did not solicit plaintiffs by placing an ad in a national magazine delivered in North Carolina.

The dissenting opinion also cites *New Bern Pool & Supply Co.* and its discussion on the convenience of the parties that where the post-contractual activities occurred strengthens a finding of personal jurisdiction. In *New Bern Pool & Supply Co.*, witnesses to the repairs of the faulty aircraft, the FAA inspectors, and the repairs themselves were located and occurred in North Carolina. 94 N.C. App. at 625-26, 381 S.E.2d at 160. Here, defendants, the real estate partnership, partnership documents and witnesses, the investor's accountants, and the underlying investment property are located in Illinois. Two of the three counts complained of by plaintiffs, Breach of Fiduciary Duty and Breach of Contract, arise from alleged activities, or a lack thereof, in Illinois. Convenience of the parties mitigates for defendants. Plaintiffs' assignments of error are overruled.

## VI. Conclusion

Plaintiffs failed to show the trial court erred in granting defendants' motions to dismiss for lack of personal jurisdiction. The order of the trial court is affirmed.

Affirmed.

JUDGE McGEE concurs.

JUDGE TIMMONS-GOODSON dissents.

TEJAL VYAS, LLC v. CARRIAGE PARK LTD. P'SHIP

[166 N.C. App. 34 (2004)]

TIMMONS-GOODSON, Judge dissenting.

I respectfully dissent from the majority's opinion which affirms summary judgment in favor of defendants.

The majority has established that defendants' activity satisfies the statutory requirements of the jurisdictional analysis. Thus, I focus this dissent on the question of whether defendants have the minimum contacts with North Carolina necessary to meet the requirements of due process. I find the cases of *Carson v. Brodin*, 160 N.C. App. 366, 585 S.E.2d 491 (2003) and *New Bern Pool & Supply Co. v. Graubert*, 94 N.C. App. 619, 381 S.E.2d 156 (1989), *aff'd*, 326 N.C. 480, 390 S.E.2d 137 (1990), to be instructive on the issue.

In *Carson*, the plaintiffs were North Carolina residents who decided to build a vacation home in Virginia. They entered into a contract with the defendant, a Virginia resident, to construct the home. The plaintiffs initiated contact with the defendant in Virginia. The plaintiffs signed the initial construction contract in Virginia. The defendant mailed a subsequent contract to the plaintiffs in North Carolina, which they signed and mailed back to the defendant in Virginia. The defendant visited the plaintiffs in North Carolina two or three times to discuss the construction project, he telephoned them in North Carolina on numerous occasions, and sent numerous mailings to them in North Carolina. The plaintiffs sued the defendant in North Carolina for breach of contract, breach of warranty, and negligence, all relating to the construction of their home in Virginia. The defendant challenged North Carolina's jurisdiction over the matter, arguing that his contacts in North Carolina were not sufficient to give the state personal jurisdiction over him.

On appellate review, this Court held that "[b]y negotiating within the state and entering into a contract with North Carolina residents, defendant purposefully availed himself of the privilege of conducting activities within North Carolina with the benefits and protection of its laws." *Carson*, 160 N.C. App. at 372, 585 S.E.2d at 496 (citing *Hanson v. Denckla*, 357 U.S. 235 (1958)). "Defendant's actions in contracting with North Carolina residents establish minimum contacts for specific jurisdiction because the actions are directly related to the basis of plaintiffs' claim." *Id.* (citing *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 115, 516 S.E.2d 647, 651 (1999)). "Because we have found minimum contacts sufficient to establish specific jurisdiction, due process is satisfied." *Id.* at 372-73, 585 S.E.2d at 496.

TEJAL VYAS, LLC v. CARRIAGE PARK LTD. P'SHIP

[166 N.C. App. 34 (2004)]

In the case *sub judice,* the evidence presented tends to show that defendants corresponded with plaintiffs or plaintiffs' attorneys in North Carolina via mail and telephone on numerous occasions. The mail correspondence included the following: a memorandum mailed by defendants to North Carolina soliciting investments in the Carriage Park project; a subscription document executed by plaintiffs in North Carolina and mailed to defendants in Illinois; and a check issued by plaintiffs in North Carolina, drawn on a North Carolina bank, and mailed to defendants in Illinois. I submit that these mailings and telephone calls are evidence of three factors in a minimum contacts analysis. *See New Bern Pool & Supply Co.,* 94 N.C. App. at 624, 381 S.E.2d at 159 ("The factors to be considered are (1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties.") (citation omitted).

The minimum contacts analysis is satisfied as follows: The mailings and telephone calls demonstrate the "quantity of the contacts" by demonstrating the volume of communication between plaintiffs and defendants at the time of the transaction. The communications demonstrate the "nature and quality of the contacts" as evidence of a high-level transaction involving substantial documentation and a sum of $100,000. Finally, the communications demonstrate the "source and connection of the cause of action to the contacts" as evidence that the transaction that is the subject of these communications is the transaction that is in dispute in this case.

The fourth factor, "the interest of the forum state," is best described by the following language from *New Bern Pool & Supply Co.*: "The interest of the State of North Carolina in providing consumer protection for its citizens and corporate entities and a forum for the adjudication of controversies involving them is substantial." 94 N.C. App. at 625, 381 S.E.2d at 160. This Court should have an interest in providing a forum for plaintiffs to resolve this controversy, particularly because it involves such a large investment of $100,000.

With regard to the fifth factor, "convenience of the parties," we note that "[t]here is almost always some hardship to the party required to litigate away from home." *Byham v. House Corp.,* 265 N.C. 50, 60, 143 S.E.2d 225, 234 (1965). However, this state has a greater interest in providing a convenient forum for its citizens to seek redress for injuries. *Inspirational Network, Inc. v. Combs,* 131

N.C. App. 231, 241, 506 S.E.2d 754, 761 (1998). "In light of the powerful public interest of [North Carolina] in protecting its citizens against out-of-state tortfeasors, the court has more readily found assertions of jurisdiction constitutional." *Id.* (citing *Ciba-Geigy Corp. v. Barnett*, 76 N.C. App. 605, 608, 334 S.E.2d 91, 93 (1985)).

I concede that the case *sub judice* is distinguished from *Carson* by the fact that defendant did not travel to North Carolina as the defendant in *Carson* did. However, I do not consider this to be a determinative factor in awarding personal jurisdiction. In *New Bern Pool & Supply Co.*, this Court asserted personal jurisdiction over a defendant who did not travel to North Carolina in connection with the transaction at issue. 94 N.C. App. 619, 381 S.E.2d 156.

In *New Bern Pool & Supply Co.*, the plaintiff was a resident of Craven County, North Carolina, who responded to an advertisement for a Beechcraft Baron airplane that the defendant, a New Jersey resident, placed in an aviation trade magazine. After their initial telephone conversation, the defendant mailed to the plaintiff photographs and specifications for the airplane. The plaintiff mailed to the defendant a check for $5,000 in exchange for the defendant's promise not to sell the airplane until the plaintiff had the opportunity to travel to New York to examine and inspect the airplane. The parties also negotiated the terms of a potential deal before the plaintiff went to New York.

The plaintiff flew to New York, examined and inspected the airplane, and closed the deal. with the defendant. On that day, the plaintiff twice asked the defendant to give him the log books for the airplane. The defendant did not give the plaintiff the log books. The following morning, as the plaintiff prepared to return to North Carolina, he again asked the defendant for the log books. The defendant gave the log books to the plaintiff just prior to his departure. The plaintiff flew the Beechcraft Baron airplane to North Carolina. During the flight home, the plaintiff discovered that some of the navigation aids aboard the airplane were not functioning properly. The plaintiff later discovered that the airplane was overdue for an inspection.

The plaintiff filed a complaint against the defendant, which the defendant sought to have dismissed on summary judgment for lack of personal and subject matter jurisdiction. The trial court denied the defendant's motion for summary judgment, and this Court found no error in the trial court's judgment. This Court held as follows:

Defendant's intentional acts in this case are such that defendant can be said to have purposely availed himself of the privilege of doing business in the State of North Carolina to the extent that defendant should have reasonably anticipated being haled into court in this State. We conclude that defendant had sufficient minimum contacts with the State of North Carolina so as to allow the trial court to exert personal jurisdiction over him and that the maintenance of this action in North Carolina does not offend traditional notions of fair play and substantial justice.

94 N.C. App. at 626, 381 S.E.2d at 160. In the case *sub judice*, as in *New Bern Pool & Supply Co.*, the totality of the circumstances provides an adequate basis for personal jurisdiction, even though defendants did not travel to North Carolina.

I am satisfied, pursuant to *Carson* and *New Bern Pool & Supply Co.*, that defendants' actions establish minimum contacts in North Carolina to establish jurisdiction without offending our "traditional conception of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945). Thus, I would reverse the order for summary judgment and remand to the trial court.